# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

EMPIRE LEASEHOLDER, LLC,                          Civil Action
et al.,                                          No. 1:26-004
        Plaintiffs,

     vs.                                       Washington, DC
                                                 January 15, 2026
DOUGLAS J. BURGUM, et al.,
        Defendants,

_____/                       11:05 a.m.


TRANSCRIPT OF PRELIMINARY INJUNCTION
ORAL RULING - via telephone
**BEFORE THE HONORABLE CARL J. NICHOLS**
UNITED STATES DISTRICT JUDGE


APPEARANCES:

**For the Plaintiffs:**    **Ann Navaro**
                      **David Super**
                      **Taylor Stuart**
                      **Tyler Johnson**
                        BRACEWELL LLP
                        2001 M Street NW, Suite 900
                        Washington D.C., DC 20036


**For Plaintiff Equinar:**  **Paul Fulton**
                      **David McSweeney**

APPEARANCES CONT'D.:


**For the Defendants:**      **Shawn Flynn**
    DoW-OGC
    1600 Defense Pentagon
    Washington, DC 20301-1600

    **Adam Gustafson**
    **Peter Torstensen**
    **John K. Adams**
    USDOJ - ENRD
    950 Pennsylvania Ave. NW
    Washington, DC 20530

    **William Doffermyre**
    **Christopher Danley**
    US Department of Interior
    1849 C Street NW
    Washington, DC 20240


**Reported By:**      **Lorraine T. Herman, RPR, CRC**
    Official Court Reporter
    U.S. District & Bankruptcy Courts
    333 Constitution Avenue NW
    Washington, DC 20001


\*\*\* Proceedings recorded by stenotype shorthand.
\*\*\* Transcript produced by computer-aided transcription.

**P R O C E E D I N G S**

**DEPUTY CLERK:** Your Honor, this is civil case year 2026-004, *Empire Leaseholder LLC and Empire Offshore Wind LLC vs. Douglas J. Burgum, et al.*

David Super, Taylor Stuart, Ann Navaro, Tyler Johnson, Paul Fulton and David McSweeney for the plaintiffs.

Peter Torstensen, John Adams, Christopher Danley, Adam Gustafson and Shawn Flynn for the defense.

**THE COURT:** Thank you, Ms. Moore.

As I mentioned yesterday, I took the preliminary injunction motion under advisement, and I am now going to issue my oral ruling with respect to it.

Plaintiffs, Empire Leaseholder LLC and Empire Offshore Wind LLC, I will refer to them collectively as Empire Wind, seek a preliminary injunction and stay pending review enjoining the enforcement of a suspension order, issued by the Bureau of Ocean Energy Management or BOEM, on December 22nd, 2025, that requires the suspension of construction on the Empire Wind project off the coast of New York.

Because the sequence of events leading up to the Suspension Order are not meaningfully in dispute, I will not recite those facts here in great detail. Still, I think it is helpful to lay out some of the relevant events at least briefly.

Empire Wind seeks to resume construction of an offshore wind farm that will provide 2,070 megawatts of power to New York.  The Project is being built in two phases:  Empire Wind 1 and Empire Wind 2.

After several years of review and applications, BOEM approved Empire Wind's construction and operations plan in February 2024.  Construction on the onshore portion of Empire Wind began in April of 2024 and offshore construction commenced in June 2024.

In April 2025, BOEM issued a stop-work order that required Empire Wind to halt construction to address environmental analysis by the National Oceanic and Atmospheric Administration.  A little over a month later, BOEM permitted Empire Wind to resume construction.

In June 2025, Empire Wind began installing the monopile foundation that will support the wind turbine generators.  It finished installation of all 43 monopile foundations in October 2025.

Empire Wind has also finished installing the jacket foundation that will support the Project's offshore substation a specialized vessel named the *Sleipnir* was on its way to November 2025 to lift the topside onto the jacket foundation.

On December 22nd, 2025, however, BOEM issued an order directing Empire Wind to "suspend all ongoing

activities relating to the Empire Wind project on the Outer Continental Shelf for the next 90 days for reasons of national security." The cite for that is ECF 8-1 at 2.

BOEM's suspension order stated that in November 2025, the Department of War had "completed an additional assessment regarding the national security implications of offshore wind projects and provided senior leadership at the Department of Interior with new classified information, including the rapid evolution of relevant adversary technologies and resulting direct impacts to national security from offshore wind projects." *Id.*

It explained that "based on BOEM's initial review of this classified information, the particularized harm posed by this project can only be feasibly averted by suspension of on-lease activities," also *Id.* And it noted that "while BOEM and DoW endeavor to reach a determination on feasible mitigation measures within 90 days following the date of this letter, BOEM may further extend the 90-day suspension period based on the status of those discussions," also *Id.*

Emphasizing that it has already invested more than $4 billion into the Project, which is now approximately 60 percent complete, Empire Wind requests a preliminary injunction that would enjoin and stay the Suspension Order pending a final adjudication of the merits.

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits; that he is likely to suffer irreparable harm in the absence of preliminary relief; and that an injunction is in the public interest."  That's *Winter v. NRDC*, 555 U.S. 7 at 20, Supreme Court decision 2008.

The last two factors merge where the government is a party because "the government's interest is the public's interest."  That's *Pursuing America's Greatness v. FEC* 831 F.3d 500 at 511, D.C. Circuit 2016.  The same standard governs a request for a stay under the APA.  See *Cuomo vs. U.S. Nuclear Regulatory Commission,* 772 F.2d 972 at 974, D.C. Circuit 1985.

I will now discuss how each of the preliminary injunction factors applies here.

Of note, I have reviewed in camera the government's ex parte submission of classified information in support of the Suspension Order.  That classified information informs my decision about the relevant factors but, for obvious reasons, I refrain from discussing it at all here publicly.

I will start with irreparable harm.  Because irreparable harm is the touchstone of preliminary injunctive relief, Empire Wind's allegations of irreparable harm necessarily inform the relief that I could conceivably order

at this time, it is helpful to begin the analysis with this factor.

The standard of irreparable harm is "high." That is *Chaplaincy of Fully Gospel Churches vs. England*, 454 F.3d 290 at 297, D.C. Circuit 2006.  The moving party must establish that "the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm" and that the injury is "beyond remediation*," Id.*

Empire Wind argues that the continued enforcement of the Suspension Order places the entire project "at a substantial risk of cancellation, posing an existential risk to Empire Wind," that's ECF 8 at 37.

*Most immediately Empire Wind contends that it must be able to resume construction January 16th, 2026, that is tomorrow, because it will otherwise lose its access to the Sleipnir* to install the offshore substation topside on the jacket foundation.  Empire Wind projects that, upon the presumption of construction it will take 10 days to repair the *Sleipnir's* lift of the topside and the actual lift itself will take four to six days to complete; that vessel must leave Empire Wind 1 by February 1, 2026 to meet its next contractural deadline.  Although at oral argument, Empire Wind stated that it is working to see whether the *Sleipnir* could stay around for a few extra days, if

necessary.  The *Sleipnir* will not be available for at least another year once it leaves, and because of its specialized nature, Theodore Mulfelder, a Vice President of Equinor Wind, the parent company of Empire Wind, stated in his sworn declaration that "there is a substantial risk that it would not be available during any new construction window; and that Empire Wind would not be able to identify and engage replacement vessels to meet any new construction window." That's his declaration, ECF 8-2 at 22.

Empire Wind explains its delays in its "construction schedule will cause a ripple effect across the overall schedule, impacting other vessel and supply contracts that cannot be renegotiated or replaced, and creating substantial risk to the Project's viability." That's ECF 8 at 38.

As another example of the cascading effects of additional delays, Empire Wind has contracted for another vessel, *Crossway Eagle*, to hookup and commission the topside between February and June 2026 following its lift onto the foundation by the *Sleipnir*.  The timely completion of that task would be put in severe jeopardy if the initial lift is not made before then.  Further complicating things, Mulfelder's sworn declaration states *Crossway Eagle* itself is already booked for the next five years; and that it "cannot readily be relaced by another vessel" which would

leave the Project unable to "produce electricity."  Again, that's his declaration at 21.

Mulfelder's declaration also provides that Empire Wind faces "an immediate financial emergency" because it is currently unable to draw down on further financing.  *Id.* at 22-23.  Relatedly, Empire Wind's creditors could make the $2.7 billion already paid immediately due if the Suspension Order remains in place on February 22nd, 2026, which would be the end of the 60-day secure period under the credit agreement.

In light of these concerns, Mulfelder states, and Empire Wind argues, that these harms "will likely result in cancellation of the Project and pose an existential threat to Empire Wind, which exists solely to construct and operate the Project."  That's his declaration at 23.

The government tries to minimize Empire Wind's allegations of irreparable harm by pointing out that "many of its alleged harms are hedged in permissive language."  That's ECF 29 at 16.  And, at oral argument, the government expressed doubt that such a large project would actually shutter due to vessel unavailability.

But "Damocles's sword does not have to actually fall on the movant before the court will issue an injunction."  That's *League of Women Voters of the United States vs. Newby* 838 F.3d 1, at 9, D.C. Circuit 2016.  After

all, the governing standard asks whether the movant "demonstrates that irreparable injury is *likely* in the absence of an injunction."  That's *Winter*, again, at 555 U.S. at 22.

Here, the obstacles created by the Suspension Order "unquestionably make it more difficult for Empire Wind to accomplish its primary mission" of constructing the Project.  Again, I'm quoting, in part*, League of Women Voters*, 838 F.3d at 9.

Empire Wind has established on this record that losing access to specialized vessels that cannot be replaced in time to meet binding deadlines, will not just cause substantial financial loss, but it will threaten Empire Wind's entire existence.  Empire Wind therefore meets the Court of Appeals standard that "recoverable monetary loss may constitute irreparable harm only where the loss threatens the very existence of the movant's business." That's Wisconsin Gas vs. FERC, 758 F.2d 669, at 674.  Again D.C. Circuit 1985

For these reasons, in my view, Empire Wind has established that it would suffer imminent irreparable harm if the Suspension Order is not preliminarily enjoined.

I turn next to the likelihood of success on the merits.  Empire Wind raises several merits arguments in challenging the Suspension Order.  In particular, Empire

Wind offers three theories of why the Suspension Order is arbitrary and capricious, a procedural argument about inadequate notice, under Section 558 of the APA, three arguments for why BOEM lacked statutory authority to issue the Suspension Order on national security grounds, and a contention that the Suspension Order violates the Due Process Clause.  For its procedural claims, Empire Wind emphasizes that it received no form of notice or an opportunity to be heard before BOEM issued the Suspension Order.

Despite Empire Wind having presented multiple plausible claims, in its opposition brief, the government responds only to the statutory authority arguments, arguing that it had the authority to issue the Suspension Order under Section 1337(p)(4) of the Outer Continental Shelf Lands Act.  Its brief does not directly respond to Empire Wind's contention that the suspension order was arbitrary and capricious, lacked proper notice and violated due process.

At oral argument, the government stated that it did not concede these unaddressed arguments, instead it asserted conclusorily that Empire Wind was wrong on the merits of these claims, albeit without providing almost any substantive explanation of why.  The government did emphasize at argument, as its brief implied at lease, that

considering the merits was ultimately unnecessary based on what the Supreme Court said in *Winter* about the balance of the equities when national security is at issue.

Under Local Civil Rule 7(b) and precedent from the Court of Appeals, "if a party files an opposition to a motion and therefore addresses only some of the movant's arguments, the court may treat the unaddressed arguments as conceded."  That's *Wannal vs. Honeywell, Inc.*, 775 F.3d 425 at 428 at D.C. Circuit 2014.  The government's belated contesting of issues at oral argument in such a conclusory manner is insufficient to cure that deficiency.

See, for example, *United States vs. Southerland* 486 F.3d 1335 at 1360, D.C. Circuit 2007, concluding that in argument raised for the first time at oral argument is forfeited.  Also*, Power vs. Barnhart* 292 F.3d 781 at 787, note 5, that's D.C. Circuit 2002, "it is simply too late to raise in argument for the first time in oral argument.  And *Schneider vs. Kissinger*, 412 F.3d 190 at 200, Note 1, again D.C. Circuit, this one is 2005, "it is not enough to merely to mention a possible argument in the most skeletal way, leaving the Court to do counsel's work, create the ossature for the argument and put flesh on its bones."

The government's failure to address several of Empire Wind's arguments is dispositive on this factor here, because even if Empire Wind was wrong to contest that BOEM

had statutory authority to issue the Suspension Order, it can still, of course, contend that the suspension order is arbitrary and capricious or violated notice and due process requirements. See, for example, *Animal Legal Defense Fund Inc. vs. Purdue*, 872 F.3d 602 at 619, D.C. Circuit at 2017, "the agency action may be consistent with the agency's authorizing statute and yet arbitrary and capricious under the APA."

In light of the lack of meaningful dispute regarding notice and due process, and given that the record appears to shows that BOEM did not give Empire Wind any form of process or an opportunity to be heard before issuing the Suspension Order, Empire Wind has established that it is likely to succeed on the merits of at least one of its unrebutted claims.

The final preliminary injunction factor requires me to weigh the hardship to Empire Wind if a preliminary injunction is not granted against the harm to the government if it is.

The government argues that this factor is dispositive in its favor because national security concerns are paramount. It cites precedent, including the Superior Court's decision to vacate a preliminary injunction on national security grounds in *Winter*, emphasizing that courts are not in the province of second-guessing the national

security judgments of executive officials, and it contends that "the classified information provides a reasonable basis on which defines that, when it comes to operation of the Project, the public interest and national security outweighs Empire Wind's alleged economic harms."  That's ECF 29 at 20.

For its part, Empire Wind reiterates the irreparable harm that it will suffer if the Suspension Order remains in effect.  It further argues that there is a "substantial public interest in having governmental agency abide by the federal laws that govern their existence and operations."  There it is quoting *League of Women Voters*, 838 F.3d at 12.  And it emphasizes that a preliminary injunction would also align with the public interest in ensuring a predictable permitting process and by supporting thousands of jobs connected to construction of the project.

The government's point that national security weighs heavily when balancing the equities is well-taken, but the government overreads *Winter*, which is distinct from this dispute in several ways.  As a threshold matter*, Winter* itself made clear that "military interests do not always trump other considerations."  That's 555 U.S. at 26.

Moving to the specific interest at issue in that case, the Supreme Court emphasized that the plaintiffs' potential injury there, which would at most be "harm to unknown number of the marine mammals that they study and

observe" was "plainly outweighed" by the government's injury, which would "force the Navy to deploy an inadequately trained antisubmarine force that jeopardizes the safety of the fleet."

Here, in contrast, Empire Wind's interest is much stronger than the *Winter* plaintiffs' interests, for all of the reasons already discussed regarding irreparable harm, while the government's interest is weaker and less concrete than it was in *Winter* when considering the activities that will occur at the Project during the limited time where a preliminary injunction would have affect while the parties are briefing the merits and I am deciding the merits on an expedited basis.

Giving deference to the government's determination of national security concerns and taking the classified information on its own terms, the record before the Court does not currently establish that the balance of the harms resulting from a preliminary injunction that merely prevents enforcement of the Suspension Order until a decision is reached on the merits on an expedited basis outweighs the irreparable harm that Empire Wind will likely suffer in the interim. Rather, the harms resulting from suspension during this stage of the Project, which threatened the very existence of Empire Wind, outweigh the harms articulated by the government during this period of project construction.

For all these reasons, I conclude that Empire Wind has demonstrated that it will suffer irreparable harm absent a preliminary injunction, that its claims are likely to succeed on the merits, and that the balance of the equities and public interest favors a preliminary injunction. Accordingly, it is ordered that Empire Wind's motion for preliminary injunction, ECF 8, is granted.

It is further ordered that the suspension order issued by Acting Director Matthew Giacona to Empire Wind on December 22nd 2025, is hereby enjoined pending a final adjudication of the merits of Empire Wind's Complaint and claims, which I intend to take up on an expedited basis, and during that period, defendants are enjoined from taking actions to implement or enforce that Suspension Order.

And it is further ordered that the Suspension Order is stayed pending review pursuant to Section 705 of the Administrative Procedure Act.

And it is further ordered that the parties shall file a joint proposed expedited summary judgment briefing schedule on or before January 20th, 2026.

That is my decision today.  Obviously that last part is a direction to the parties.

I had contemplated having a discussion here today about an appropriate expedited briefing schedule, but in my view, the parties should, in the first instance, have that

conversation and then propose something to me on Monday.  So I am contemplating there, and just to explain a little bit more what I am ordering on that last point, I want the parties to meet and confer and to propose to me no later than Tuesday, January 20th, 2026, a joint proposed expedited summary judgment briefing schedule.

In the event the parties cannot agree on some or all of such a schedule, they should include in that joint submission their respective views on the various disputes.  Okay?

Any questions about my decision or what I've directed the parties to do by Tuesday, from the plaintiffs' side, Ms. Navaro?

**MS. NAVARO:**  No, Your Honor.  We have no questions.  This is Ann Navaro.  I'm sorry for the court reporter.  Thank you very much.

**THE COURT:**  Okay.  Does the government have any questions that it would like to ask of what I have required the parties to do by Tuesday?

**MR.  TORSTENSEN:**  No, Your Honor.

This is Mr. Torstensen.  We don't have any questions.

**THE COURT:**  Okay.  Thank you-all.  We look forward to your submissions on Tuesday.  And, of course, in the event that the parties meet and confer in advance of that

and reach agreement or at least have staked out their positions and wish to propose something before then or file something before then, they may do so.  Just in no event would I like something later than Tuesday.  Okay?

Thank you-all.

(Proceedings concluded at 11:28 a.m.)

# C E R T I F I C A T E

I, **Lorraine T. Herman, Official Court Reporter,** certify that the foregoing is a true and correct transcript of the record of proceedings in the above-entitled matter.

**Please Note:**  This hearing occurred remotely and is therefore subject to the technological limitations of court reporting remotely.

____January 15, 2026____          ____/s/ Lorraine T. Herman____
       **DATE**                              **REPORTED BY**