IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Sunrise Wind LLC**,<br><br>       Plaintiff,<br><br>    v.<br><br>**Douglas J. Burgum,** in his official capacity as Secretary of the Interior, **et al.**,<br><br>       Defendants. | Case No. 1:26-cv-00028-RCL<br><br>Case No. 1:26-cv-00072-RCL (consolidated) |
| **State of New York, et al.**,<br><br>       Plaintiffs,<br><br>    v.<br><br>**Douglas J. Burgum,** in his official capacity as Secretary of the Interior, **et al.**,<br><br>       Defendants. | |

**FEDERAL DEFENDANTS' MOTION TO STAY**

Federal Defendants request that the Court stay these consolidated cases for 40 days (up to and including April 9), at which point Federal Defendants propose that the parties file a status report recommending any necessary further proceedings, including any further stay. Plaintiff in *Sunrise Wind* opposes both the stay and the alternative extension request we make below. Plaintiffs in *New York* take no position until having the opportunity to review the motion.

As explained further below, good cause exists for the short stay. Plaintiffs challenge BOEM's order suspending all ongoing activities on the Sunrise Wind Project for ninety days. Letter from Matthew Giacona to Rob Keiser (Dec. 22, 2025) ("Suspension Order" or "Order"), Ex. C to Decl. of Matthew Giacona (Jan. 22, 2026), Dkt. No. 31-1. The Order expires on March

1

22. Further, BOEM issued the Order to facilitate review of any potential mitigation measures to address then-new information from the Department of War that implicates national security concerns. *See* Suspension Order. The end of that review may result in a further decision from BOEM. *See id*. Though the timing of any further BOEM action is uncertain, proceeding to immediately litigate the case as presently pled would potentially waste both the Court's and the parties' resources. Even more so given that litigation will only distract Federal Defendants from the further review envisioned by the Order. And because the Suspension Order is preliminarily enjoined, Plaintiffs will not be prejudiced by a short stay. At the expiration of the stay, the parties can confer and determine what, if any, further proceedings are appropriate.

### Factual Background

In March 2024, BOEM issued a joint Record of Decision with the National Marine Fisheries Service documenting its decision to approve of the Sunrise Wind Project. Dkt. No. 31-2. The Project has been under construction in federal waters east of Long Island, New York. *See* Compl. ¶¶ 5, 27, Dkt. No. 1. In November 2025, BOEM received classified information from the Department of War describing "the rapid evolution of relevant adversary technologies and the resulting direct impacts to national security from offshore wind projects." Suspension Order; Giacona Decl. ¶¶ 4, 6. On December 22, 2025, BOEM issued an order, "pursuant to 30 C.F.R. § 585.417(b), to suspend all ongoing activities related to the [Project] on the Outer Continental Shelf for the next 90 days for reasons of national security." Suspension Order. BOEM determined that the Project's current mitigation measures did not adequately provide for protection of national security interests. Giacona Decl. ¶ 7. BOEM intended to determine whether additional mitigation would address these concerns within the 90-day review period, but BOEM explained that a longer review period may be necessary based on the status of its discussions with the Department of War.

Suspension Order. "Given the construction status of this project, BOEM will consider all feasible mitigation measures before making a decision as to whether the project must be cancelled." *Id.* Per its terms, the Suspension Order will expire on March 22 absent an extension. On February 2, the Court preliminarily enjoined the Suspension Order. *See* Tr. 57:12–64:7, Feb. 2, 2026.

### Legal Standard

This Court's authority to stay proceedings flows from its inherent equitable authority to "control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *see also Clinton v. Jones*, 520 U.S. 681, 706 (1997). In evaluating a motion to stay, courts must "weigh competing interests and maintain an even balance." *Landis*, 299 U.S. 248 at 254–55. Courts in the D.C. Circuit consider (1) "whether a stay would promote efficient use of the court's resources"; (2) "the moving party's need for a stay—that is, the harm to the moving party if a stay does not issue"; and (3) "harm to the nonmoving party if a stay does issue [.]" *Allen v. District of Columbia*, No. 20-cv-02453-TSC, 2024 WL 379811, at *2 (D.D.C. Feb. 1, 2024) (citation omitted); *Nat'l PFAS Contamination Coal. v. EPA*, No. 22-cv-132-JDB, 2023 WL 22078, at *3 (D.D.C. Jan. 3, 2023) (same); *Campaign Legal Ctr. v. Correct the Rec.*, No. 23-cv-75-JEB, 2023 WL 2838131, at *2 (D.D.C. Apr. 7, 2023) (same).

### Argument

In the interests of judicial economy, the Court should stay this case for 40 days (up to and including April 9). The Suspension Order that Plaintiffs challenge expires on March 22 and its terms anticipate potential future agency action. That action could resolve the matter or necessitate amended complaints. Thus, a stay would promote judicial economy and prevent unnecessary expenditure of Federal Defendants' and Plaintiffs' resources litigating the case as presently pled.

The proposed stay would not prejudice any party because the Suspension Order is preliminarily enjoined.

**I.      The Interests of Judicial Economy Strongly Favor a Stay.**

First, a stay would clearly serve the interests of judicial economy.  A stay is appropriate "when there are legitimate developments that could obviate the need for judicial review," *Utah v. EPA*, No. 23-1157, 2025 WL 1354371, at *2 (D.C. Cir. May 2, 2025).  "[A] trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *IBT/HERE Emp. Representatives' Council v. Gate Gourmet Div. Ams.*, 402 F. Supp. 2d 289, 292 (D.D.C. 2005) (citation omitted); *see also Allen*, 2024 WL 379811, at *5 (granting a stay because it would "promote efficient use of the court's resources[,]" as the "court's limited resources are not well spent adjudicating . . . disputes that may be obviated [by appeal proceedings]"); *Nat'l PFAS Contamination*, 2023 WL 22078, at *5 (granting a stay where the agency announced plans to promulgate a rule that was expected to render the case moot).

Federal Defendants' answers to the *Sunrise Wind* and *New York* complaints are presently due on March 9 and March 23, respectively.  Under Local Rule 7(n)(1)—and depending on which answer triggers the 30-day deadline—BOEM's administrative record would be due as soon as April 8.  But the Suspension Order expires on March 22.  *See* Suspension Order.  Further, the Order contemplates that BOEM may be making a further decision regarding the Project—the Order's goal was to facilitate discussions in that regard.  *See id.*  Indeed, representatives from Interior and Sunrise Wind are engaged in those discussions, with Sunrise Wind providing information as recently as February 23.  The result of those discussions and the agency's review will likely clarify whether this case will necessitate a substantively different legal analysis or,

indeed, whether this litigation should proceed at all.  *See FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 244 n.11 (1980) ("[O]ne of the principal reasons to await the termination of agency proceedings is to obviate all occasion for judicial review." (internal citation and quotation marks omitted)).  Should BOEM, Sunrise Wind, and the Department of War be able to identify feasible mitigation measures to address the national security concerns, it is likely the parties would be able to explore a resolution of the present complaints without further litigation.  Conversely, if BOEM takes a new action impacting the Sunrise Wind Project, it would likely affect the parties' positions and contentions in this case.  At a minimum, it would result in a new final agency action, any challenge to which would necessitate amended complaints.

Judicial economy would not be served by proceeding to litigate the cases as presently pled, when Plaintiffs' cases are likely to be mooted or impacted by the ongoing administrative proceeding and any future BOEM's new decision.  Staying this case will support "economy of time and effort for [the Court], for counsel, and for litigants." *Bledsoe v. Crowley*, 849 F.2d 639, 645 (D.C. Cir. 1988) (quoting *Landis*, 299 U.S. at 254); *see also Nat. Res. Def. Council v. Kempthorne*, No. 1:05-cv-1207-LJO-GSA, 2015 WL 3750305, at *8 (E.D. Cal. June 15, 2015) ("The efficiencies of Federal Defendants' proposed [stay] are obvious . . . . Depending on the outcome of the [agency's action on remand], the Court's intervention may not be needed at all. Even if further judicial intervention is sought, the Court and the parties would benefit from an updated record that may address some of the numerous issues raised in this case[.]").

## II.     A Stay Will Prevent Unnecessary Burden on Federal Defendants.

Absent a stay, Federal Defendants would be forced to spend limited Department of the Interior and Department of Justice resources responding to two complaints containing 318 paragraphs and indexing BOEM's administrative record, despite the Suspension Order's

impending expiration and the potential for further BOEM action. *See, e.g.*, *J.M. Martinac Shipbuilding Corp. v. Washington*, No. 06-cv-1544-JCC, 2007 WL 445438, at \*4 (W.D. Wash. Feb. 6, 2007) (noting that it is prejudicial to force government Defendants to proceed in litigation "when it is already clear that the outcome of the [administrative proceedings] will impact the final resolution of this case"). If litigation continues in the interim, the "federal agenc[y] would be required to dedicate staff time and resources to litigating the merits of [p]laintiffs' claims, [when] those resources could be re-directed to other efforts." *Nat. Res. Def. Council*, 2015 WL 3750305, at \*8; *see Ashcroft v. Iqbal*, 556 U.S. 662, 685 (2009) (noting that litigation "exacts heavy costs in terms of efficiency and expenditure of valuable time and resources that might otherwise be directed to the proper execution of the work of the Government"). This would include pulling resources away from the further discussions with Sunrise Wind and the Department of War envisioned in the Order. The same could also be said for Plaintiffs' resources. The better course is to stay proceedings.

**III.    There Will be No Prejudice to the Non-Moving Parties.**

A stay will not prejudice Plaintiffs because the Suspension Order is preliminarily enjoined. *See* Tr. 64:2–64:7; Minute Order, Feb. 2, 2026. So long as that injunction remains in place, Plaintiffs are "unlikely to be prejudiced by a stay that could reduce the burden of litigation on [all] parties." *Cunningham v. Homeside Fin., LLC*, No. 17-cv-2088-MJG, 2017 WL 5970719, at \*2 (D. Md. Dec. 1, 2017); *see Friends of Animals v. Williams*, 628 F. Supp. 3d 71, 78 (D.D.C. 2022).

But even if Plaintiffs could articulate some prejudice from a short, 40-day stay, at a minimum the circumstances justify an extension of the current answer deadlines. Thus, should the Court find a stay inappropriate, Federal Defendants alternatively request that their answer deadline for each complaint be extended to April 9. That would constitute a 31-day extension of the answer

deadline in *Sunrise Wind*, and a 17-day extension of the deadline in *New York*. As noted above, the two complaints contain a combined 318 paragraphs, spanning 96 pages. Their length alone would justify an extension under any circumstance. And undersigned counsel also have several competing litigation deadlines. Mr. Swanson, an Assistant Section Chief, has supervisory responsibility over more than 80 open cases, in which 21 briefs on motions to dismiss, for summary judgment, or for injunctive relief have been, or are scheduled to be, due between January 6 (the date of the *Sunrise* complaint) and the end of March. Ms. Dutton-Bynum has had or has briefing deadlines for dispositive or emergency motions practice on January 23, January 28, February 20, March 2, and March 10, and is co-counsel on a multi-billion-dollar Fifth Amendment takings case in the Court of Federal Claims.

## Conclusion

A 40-day stay of this case would best serve judicial economy, preserve Federal Defendants' and Plaintiffs' resources, and would not prejudice Plaintiffs because the Court has enjoined BOEM's Suspension Order. The Court should stay this case up to and including April 9 and further order the parties to file a status report on April 9 proposing what further proceedings, if any, are appropriate.

February 27, 2026

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General

PETER M. TORSTENSEN, JR.
Deputy Assistant Attorney General

JOHN K. ADAMS
Senior Counsel and Chief of Staff

*s/ Kristofor R. Swanson*

7

KRISTOFOR R. SWANSON
(Colo. Bar No. 39378)
AMBER DUTTON-BYNUM
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 7611
Washington, DC 20044-7611
(202) 598-1937 (Swanson)
(202) 330-2694 (Dutton-Bynum)
kristofor.swanson@usdoj.gov
amber.dutton-bynum@usdoj.gov

*Attorney for Federal Defendants*