## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SUNRISE WIND LLC, | |
| *Plaintiff*, | |
| v. | Case No.: 1:26-cv-00028-RCL |
| DOUGLAS J. BURGUM, in his official capacity as Secretary of the U.S. Department of the Interior, *et al.*, | |
| *Defendants*. | |
| STATE OF NEW YORK, *et al.*, | |
| *Plaintiffs*, | |
| v. | Case No.: 1:26-cv-00072-RCL (consolidated) |
| DOUGLAS J. BURGUM, in his official capacity as Secretary of the U.S. Department of the Interior, *et al*., | |
| *Defendants*. | |

## SUNRISE WIND LLC'S OPPOSITION TO
## FEDERAL DEFENDANTS' MOTION TO STAY

Plaintiff Sunrise Wind LLC ("Sunrise Wind") seeks to invalidate the unlawful December 22, 2025 order issued by Department of the Interior's Bureau of Ocean Energy Management ("BOEM"), suspending Sunrise Wind Project activities on the Outer Continental Shelf for purported national security reasons (the "Stop Work Order"). This Court and every other one that has considered this issue have now preliminarily enjoined or otherwise stayed all five of BOEM's nearly identical December 2025 stop work orders, so construction of the five offshore wind projects has continued. But those December 2025 orders are key steps in an overall path of

continuous, successive attempts, over the course of nearly a year, and supposedly based on the same overbroad interpretation of the governing statute, to achieve the Administration's publicly-stated goal of stopping offshore wind by halting construction and ultimately potentially terminating leases.

Federal Defendants now ask this Court to stay these proceedings up to and including April 9, 2025, or in the alternative grant a lengthy extension of their deadline to answer. Federal Defendants currently argue that the Stop Work Order expires on March 22, 2026, despite having previously acknowledged that the order's text means it can be renewed indefinitely. Federal Defendants' justification to this Court for seeking a stay is at odds with public statements by Federal Defendants, including Secretary of the Interior Burgum's stated intentions both to appeal the preliminary injunctions against the December 2025 stop work orders and to "press forward through the legal system." Moreover, although Federal Defendants argue that a stay will allow for "mitigation" discussions between Federal Defendants, Sunrise Wind, and the Department of War, both Federal Defendants and the Department of War remain unwilling to discuss the purported national security concerns or potential "mitigation" or "enhancements" in any meaningful way. Specifically, as of the date of this filing, Sunrise Wind has yet to receive unclassified summaries of the information allegedly supporting the Stop Work Order, and the Department of War has refused to disclose the classified information to Sunrise Wind's representatives who hold the requisite security clearances. Furthermore, neither the Department of War nor BOEM has provided any relevant new information or otherwise meaningfully engaged with Sunrise Wind, even after Sunrise Wind—at BOEM's request—provided information on added radar coverage that would provide capabilities beyond what Sunrise Wind understands the Government currently to have. Indeed, in the now close to three months that have passed since the Stop Work Order was

issued without notice or process, no federal representative has suggested any measure for consideration by Sunrise Wind. Nor have they responded to materials submitted by Sunrise Wind, a refusal to engage that cannot even be justified by restrictions on classified information.

Federal Defendants' motion is a thinly veiled attempt to prevent judicial scrutiny of the unlawful Stop Work Order. Federal Defendants have identified no cognizable harm that they will suffer in the absence of a stay; the only currently-scheduled deadlines are to respond to the Plaintiffs' complaints and prepare the administrative record consistent with local rule requirements—hardly a burdensome task given that the Government has already answered in the related *Revolution Wind v. Burgum* case and filed nearly identical administrative records in two other offshore wind cases challenging the stop work orders. Nor will a stay promote judicial economy, in light of Secretary Burgum's public commitment to pursuing these stop work order cases and given Federal Defendants' pattern of issuing successive stop work orders against offshore wind projects. Sunrise Wind would be harmed if Federal Defendants are permitted to impede the litigation process particularly based upon the speculative assertions made here. Indeed, the Court recently denied Federal Defendants' similar request for a stay in another stop work order challenge because the government had not met its burden to justify a stay. Minute Order, *Empire Leaseholder LLC, et al. v. Burgum*, 1:26-cv-00004-CJN (Mar. 9, 2026). So too here. For these reasons, and those set forth below, this Court should deny the motion to stay.

## BACKGROUND

The Sunrise Wind Farm and Export Cable (together, the "Project") is an offshore wind energy project that is currently under construction on the Outer Continental Shelf, and that will provide enough clean, affordable renewable energy to power over 600,000 homes in New York State. Compl. ¶¶ 2, 8. The Project consists of eighty-four wind turbine generators, an offshore

converter station, associated inter-array cabling between the wind turbine generators, and an export cable that will bring power to the grid. *Id.* ¶ 5. Overall, the Project is nearly 45% complete and has cost billions of dollars. *Id.* In addition to providing reliable clean energy, the Project will also support more than 3,500 jobs across construction, manufacturing, shipbuilding, and operations. *Id.* ¶ 8. Indeed, the Project has already generated more than one million union labor hours across more than 1,000 local workers. *Id.*

Despite the substantial anticipated benefits of the Project and the billions of dollars invested by Sunrise Wind in reliance on Federal Defendants' consensus decision to permit the Project nearly two years ago, the Project has been under constant threat for over a year since the Administration started its campaign to end offshore wind in the United States. *Id.* ¶¶ 1, 9-12.

The issuance of the Stop Work Orders in December 2025 is not the first time that Secretary Burgum and this Administration have taken action to halt offshore wind projects. The first round of illegal stop work orders against a permitted offshore wind project was on April 16, 2025, when BOEM issued a stop work order halting construction for a month on the Empire Wind Project due to purported concerns raised by the National Oceanic and Atmospheric Administration. *Id.* ¶ 100. BOEM subsequently amended that order a month later to allow construction to proceed. *Id.* The second round of illegal stop work orders was on August 22, 2025, when BOEM issued an unlawful stop work order halting offshore construction of the Revolution Wind Project, including on specious national security grounds. *Id.* ¶ 12. That Order was swiftly enjoined by this Court as the "height of arbitrary and capricious action." Tr. of Prelim. Inj. Hrg. 41:18-19, *Revolution Wind, LLC v. Burgum*, No. 1:25-cv-02999-RCL (D.D.C. Sept. 22, 2025), Dkt. 39. The third round of illegal stop work orders was BOEM's nearly-identical December 2025 stop work orders issued to five separate offshore wind projects, all of which have been enjoined or otherwise stayed. These

actions, including the Stop Work Order at issue here, are all part of a pattern of Federal Defendants' continued unlawful conduct targeting offshore wind.[1]

## LEGAL STANDARD

In determining whether to grant a motion to stay proceedings, "the Court must weigh competing interests and maintain an even balance between the court's interests in judicial economy and any possible hardship to the parties." *Ctr. for Biological Diversity v. Ross*, 419 F. Supp. 3d 16, 20 (D.D.C. 2019) (quoting *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 732-33 (D.C. Cir. 2012) (quotation marks and citation omitted)). It is the movant's burden to establish the need for a stay. *Id.* And, "'if there is even a fair possibility that the stay . . . will work damage to someone else,' the movant 'must make out a clear case of hardship or inequity in being required to go forward.'" *Id.* (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)). The Court must consider, then: "(1) harm to the nonmoving party if a stay does issue; (2) the moving party's need for a stay . . . ; and (3) whether a stay would promote efficient use of the court's resources." *Id.*

## ARGUMENT

Federal Defendants' motion fails on every prong of the test for a stay of proceedings. As another judge in this Court has determined in a pending challenge to another stop work order, a stay would not promote judicial economy in these circumstances. Indeed, Federal Defendants' own statements contradict the idea that the Stop Work Order "expires" and Federal Defendants

---

[1] Just four days before the December 22, 2025 Stop Work Order at issue in this case was signed, the U.S. District Court for the District of Massachusetts entered a judgment declaring unlawful and setting aside the administration's pause on issuing all wind energy authorizations that Defendants had employed pursuant to President Trump's executive memorandum titled "Temporary Withdrawal of All Areas on the Outer Continental Shelf From Offshore Wind Leasing and Review of the Federal Government's Leasing and Permitting Practices for Wind Projects," 90 Fed. Reg. 8363 (Jan. 20, 2025). Judgment, *New York v. Trump*, No. 1:25-cv-11221-PBS (D. Mass. Dec. 18, 2025), Dkt. 240. The Government has filed an appeal of that judgment. *See New York, et al. v. Trump, et al.*, No. 26-1174 (1st Cir.).

have refused to discuss national security enhancements in any meaningful way with Sunrise Wind's cleared representatives. The balance of the harms weighs entirely in favor of Sunrise Wind. In contrast to Sunrise Wind's recognized interest in pursuing a final judgment, Federal Defendants have identified no cognizable interest in a stay, complaining only of the burden of litigation, which here is minimal. For many of the same reasons, Federal Defendants have not demonstrated good cause to support their alternative request for an extension of the answer deadline, which they have now missed without leave of the Court. The lack of good cause is underscored by the fact that Federal Defendants already filed their answers in *Revolution Wind, LLC v. Burgum*, a related case with a substantially overlapping complaint. This alternative request for an extension until April 9, 2026 is no more than an attempt to get the same relief that a stay would provide. Although no extension is warranted, this Court should deny Federal Defendants' motion and order Federal Defendants to file their answer to Sunrise Wind's complaint by March 23, 2026, Federal Defendants' deadline to answer the State of New York's complaint in the consolidated case, or three days after the Court rules on the motion, whichever is earlier.

## I.    A STAY WOULD NOT PROMOTE JUDICIAL ECONOMY

A stay would not promote judicial economy under these circumstances, where Federal Defendants' justification rests on two distinct fictions. **First**, Federal Defendants argue that the Stop Work Order "expires" on March 22, 2026. Mot. at 4. But Federal Defendants' own statements belie that assertion. Because the Stop Work Order states that "BOEM may further extend" the suspension period, Compl., Ex. A, Dkt. 1-1, in response to a question from this Court in *Revolution Wind*, counsel for Federal Defendants conceded that the Stop Work Order could extend "forever." Tr. at 29:2-7, *Revolution Wind, LLC v. Burgum*, No. 1:25-cv-2999 (Jan. 12, 2026), Dkt. 65. Secretary Burgum also recently told the press that Federal Defendants "absolutely" will appeal this and other courts' decisions "blocking efforts to stop construction of offshore wind

farms," in sharp contrast to Federal Defendants' justification that the Stop Work Order is expiring anytime soon.[2]  And the day before Federal Defendants filed this motion, Secretary Burgum was quoted as stating that Interior intends to "press forward through the legal system" with respect to the five offshore wind projects that were granted preliminary injunctions and/or stays.[3]

   **Second**, Federal Defendants suggest that a stay would promote judicial economy because the parties are "engaged" in discussions regarding measures to address the government's purported concerns and "it is likely the parties would be able to explore a resolution of the present complaints without further litigation."  Mot. 4-5.  This could not be further from the truth.  Although Sunrise Wind has made multiple attempts to discuss measures to address Federal Defendants' purported concerns with them, they continue to refuse meaningful engagement.  Decl. of Bryan Stockton in Support of Sunrise Wind LLC's Opp'n to Fed. Defs.' Mot. to Stay ("Third Stockton Decl.") ¶¶ 3-6.  Federal Defendants have not provided any information as to the substance of the purported national security threats, refused to discuss the supposed threats with Sunrise Wind's experts with Top Secret/Sensitive Compartmented Information ("TS/SCI") national security clearance, and have not provided any unclassified summaries to Sunrise Wind that would allow it to understand what measures would be particularly effective to address the purported concerns.  *Id.* at ¶¶ 4-6.  Indeed, although Federal Defendants seek in their Motion to Stay to rely on information provided by Sunrise Wind, in truth Federal Defendants had not even acknowledged receipt of the information Sunrise Wind submitted on February 23, 2026 let alone engaged on any of it.  *Id.* at ¶

---

[2] Ari Natter and Jonathan Ferro, *Trump Administration to Appeal Offshore Wind Farm Rulings*, Bloomberg (Feb. 11, 2026), available at: https://www.bloomberg.com/news/articles/2026-02-11/trump-administration-to-appeal-offshore-wind-farm-rulings.

[3] Audrey Streb, *Exclusive: 'Did People Forget About 9/11?' Doug Burgum Warns of Wind Energy Security Risks*, Daily Caller (Feb. 26, 2026), available at: https://dailycaller.com/2026/02/26/people-forget-911-top-trump-official-offshore-wind-national-security-risks/.

6.  It is also questionable whether Federal Defendants ever truly intended to consider additional measures here.  On February 12, 2026, the President reiterated that the Administration is "fighting very hard to ensure that [wind farms] don't get built," and in particular that the Administration is "trying to terminate" leases for the five under-construction projects, including Sunrise Wind. *Transcript: President Trump Repeals Government Climate Change Finding, 2.12.26*, Senate Democrats (Feb. 12, 2026).[4]  And then, on March 4, 2026, the President reiterated his views, saying:  "Don't worry about wind.  Forget it, it's worthless—*you don't get approvals for wind*."[5] There is no judicial economy in staying this case without resolution on the limits of BOEM's authority under 43 U.S.C. § 1337(p)(4) and the process due to Sunrise Wind.  Such a course of action would waste the resources already expended in this case and facilitate Federal Defendants instead pursuing another adverse and unlawful action against the Project which will only result in yet another emergency motion seeking relief from this Court.

Underlying Federal Defendants' argument is the supposition that Sunrise Wind's case will somehow become "moot" as a result of yet-to-be-determined and unspecified action that may or may not occur on or after March 22, 2026.  Mot. at 4.  But courts in this district routinely reject such speculative arguments.  Indeed, in response to Federal Defendants' stay request in Empire Wind's challenge to its December 2025 stop work order, Judge Nichols found that "the government's concern about potential future actions is too speculative, at this stage, for

---

[4] Transcript available at: https://www.democrats.senate.gov/newsroom/trump-transcripts/transcript-president-trump-repeals-government-climate-change-finding-21226.  Video available at: https://www.c-span.org/program/white-house-event/president-trump-and-epa-administrator-announce-rollback-of-2009-endangerment-finding/673338.

[5] Transcript available at: https://rollcall.com/factbase/trump/transcript/donald-trump-remarks-roundtable-energy-ratepayer-protection-march-4-2026/ (emphasis added).  Video available at: https://www.whitehouse.gov/videos/president-trump-participates-in-a-roundtable-on-ratepayer-protection-pledge/.

considerations of judicial economy to weigh in its favor."  Minute Order, *Empire Leaseholder LLC, et al. v. Burgum*, 1:26-cv-00004-CJN (Mar. 9, 2026).  As another example, in *Center for Biological Diversity v. Ross*, the court rejected the Government's argument in favor of a stay that a forthcoming biological opinion could render the present suit moot.  419 F. Supp. 3d 16, 23 (D.D.C. 2019).  The court emphasized that the agency "cannot now commit to the conclusion it will reach in that" biological opinion and, in any event, "it [was] far from clear that [the agency] will be able to stick to" the schedule it outlined for issuance of that opinion.  *Id.*  So too here. Federal Defendants do not actually commit to taking any particular action on March 22, 2026.[6] And Secretary Burgum and this Administration's repeated unlawful efforts to halt all offshore wind projects undermines Federal Defendants' arguments.  *See supra* at 4-5.  While this issue would be litigated at the appropriate time, these facts present a textbook case of agency action that is "capable of repetition" and "yet evading" final review on the merits.  *See Del Monte Fresh Produce Co. v. U.S.*, 570 F.3d 316, 322-23 (D.C. Cir. 2009).  It is not in the interest of judicial economy to litigate a series of emergency motions while Federal Defendants take repeated unlawful attempts to reach the same goal, which the Administration has made clear is termination of the Sunrise Wind Project.[7]

---

[6] Similarly, in *Asylumworks v. Mayorkas*, the court declined to grant a stay when "a proposed stay [was] premised on speculative administrative changes and judicial decisions that may fall far short of providing any relief sought by plaintiffs."  No. 20-CV-3815 (BAH), 2021 WL 2227335, at *5 (D.D.C. June 1, 2021).  As in *Asylumworks*, it is notable that nothing in Federal Defendants' motion "provide[s] any indication" that it plans to take action which may "moot or reshape the claims in this case."  *Id.*

[7] *Transcript: President Trump Repeals Government Climate Change Finding, 2.12.26*, Senate Democrats (Feb. 12, 2026) (noting that the Administration is "trying to terminate" existing leases).

## II.   THE BALANCE OF HARMS HEAVILY WEIGHS AGAINST FEDERAL DEFENDANTS

Federal Defendants' proposed stay harms Sunrise Wind for the simple reason that it interferes with Sunrise Wind's right to pursue a final judgment. *See Jefferson v. Collins*, No. CV 12-239 (RBW), 2015 WL 13659260, at *4 (D.D.C. Oct. 7, 2015) (considering "plaintiffs' interest in forging ahead toward ultimate resolution of this case" in denying defendants' motion to stay). The D.C. Circuit recognizes a plaintiff's "'right to maintain [its] case'" and Federal Defendants' proposed stay "impacts that right by preventing [Sunrise Wind] from pressing its claims while the stay is in place." *OCA - Asian Pac. Am. Advocs. v. Rubio*, No. CV 25-287 (TJK), 2025 WL 1393153, at *1 (D.D.C. May 14, 2025) (quoting *Dellinger v. Mitchell*, 442 F.2d 782, 787 (D.C. Cir. 1971)).  And although Federal Defendants' proposed stay is for a period of 40 days, that stay might as well be indefinite, given that Federal Defendants appear to be seeking time to prepare their fourth round of adverse action against offshore wind projects, including Sunrise Wind.  Given their dismal track record in every court to consider motions to preliminarily enjoin the stop work orders, it is not surprising that Federal Defendants are eager to avoid answering, producing the administrative record consistent with the local rules of the Court, and defending the Stop Work Order on cross motions for summary judgment.  But that is not a valid justification for a stay. Federal Defendants acknowledge that they may attempt to take some further action involving Sunrise Wind.  *See* Mot. at 5 (contemplating potential "new action impacting the Sunrise Wind Project").  But Federal Defendants cannot simultaneously argue that this case is moot and that it may take further action against the Project.  Unless Federal Defendants represent that they will take no further action to halt the Project, they effectively concede that the Stop Work Order is

capable of repetition yet evading review and Sunrise Wind has an interest in moving this case forward expeditiously.[8]

In contrast, Federal Defendants identify no cognizable harm justifying a stay. Federal Defendants purported "harm" is essentially that they would be required to litigate the case in the absence of a stay. Mot. at 5-6 (explaining that Federal Defendants will be required to spend resources responding to the complaint, which is currently due on March 9, 2026, and indexing the administrative record). But Federal Defendants fail to "explain how defense of this suit, which falls largely to lawyers at the Department of Justice, will divert substantial . . . resources" from the agency defendants. *See Ctr. for Biological Diversity*, 419 F. Supp. 3d at 22. If anything, answering Sunrise Wind's complaint should be a relatively light lift given that Federal Defendants have already filed an answer to a substantially similar complaint in *Revolution Wind, LLC v. Burgum,*, No. 1:25-cv-2999, Dkt. 80 (Feb. 20, 2026). Indeed, the amount of effort Federal Defendants will have expended on their motion and anticipated forthcoming reply is likely comparable to drafting an answer. It is also difficult to imagine why indexing the administrative record would be time-intensive given that Federal Defendants have openly admitted to relying on the same evidence for all five stop work orders issued to different projects on December 22, 2025, and Federal Defendants have already filed a certified index of the administrative record in *Empire Leaseholder LLC v. Burgum*, No. 1:26-cv-00004, Dkt. 40 (D.D.C. Feb. 13, 2026) and in *Vineyard Wind 1 LLC V. U.S. Department of the Interior*, No. 1:26-cv-10156-BEM, Dkt. 86-1 (D. Mass. March 6, 2026). Those indexes reflect nearly identical administrative records, and Federal Defendants filed the

---

[8] Federal Defendants' suggestion that a stay is helpful to Sunrise Wind because it will "prevent unnecessary expenditure of . . . Plaintiffs' resources litigating the case as presently pled," Mot. at 3, is absurd in light of the tens of millions of dollars Sunrise Wind has already been forced to expend due to Federal Defendants' unlawful actions.

*Vineyard* record on March 6, 2026, after seeking a stay in this case and in the *Empire Wind* case. As this Court has recognized, "[i]f anything, the existence of parallel litigation in a more advanced posture should lessen the work the agency must complete in this case." *Gona v. U.S. Citizenship & Immigr. Servs.*, No. 1:20-CV-3680-RCL, 2021 WL 1226748, at *1 (D.D.C. Apr. 1, 2021); *see also* Minute Order, *Empire Leaseholder LLC, et al. v. Burgum*, 1:26-cv-00004-CJN (Mar. 9, 2026).

Moreover, "being required to defend a suit" does not rise to a "clear case of hardship or inequity," particularly for "counsel of the United States, the richest, most powerful, and best represented litigant to appear before the Court." *Ctr. for Biological Diversity*, 419 F. Supp. 3d at 21; *see also Asylumworks*, 2021 WL 2227335, at *6 ("That burden of litigation is wholly insufficient to warrant a stay."). This situation is one of the Government's own making, and if Federal Defendants feel they are burdened, they are free to withdraw the Stop Work Order and commit to not taking similar action in the future.

Federal Defendants also argue that they would be forced to "pull[] resources away from the further discussions" with Sunrise Wind and the Department of War regarding enhancements to existing capabilities. But, as discussed, Federal Defendants and the Department of War have not been engaged in any meaningful discussions with Sunrise Wind, despite Sunrise Wind's repeated outreach and attempts, including the passage of extensive periods without any litigation deadlines. *See supra* at 7-8. For the same reasons, Federal Defendants have not demonstrated good cause to support an extension of the answer deadline.

## **CONCLUSION**

For the reasons set forth herein, the Court should deny Federal Defendants' motion to stay. Pursuant to Local Civil Rule 7(c), a proposed order is attached.

Dated:  March 13, 2026                    Respectfully submitted,

                                          */s/ Janice M. Schneider*

                                          Janice M. Schneider (D.C. Bar No. 472037)
                                          Stacey L. VanBelleghem (D.C. Bar No. 988144)
                                          Roman Martinez (D.C. Bar No. 1001100)
                                          Devin M. O'Connor (D.C. Bar No. 1015632)
                                          Rachael L. Westmoreland (D.C. Bar No. 90034032)
                                          LATHAM & WATKINS LLP
                                          555 11th Street NW, Suite 1000
                                          Washington, D.C. 20004
                                          Tel:  (202) 637-2200
                                          Fax:  (202) 637-2201
                                          Email: janice.schneider@lw.com
                                                    stacey.vanbelleghem@lw.com
                                                    roman.martinez@lw.com
                                                    devin.o'connor@lw.com
                                                    rachael.westmoreland@lw.com

                                          *Counsel for Plaintiff Sunrise Wind LLC*